IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BARRON WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| ATLANTA METROPOLITAN | ) | |
| STATE COLLEGE POLICE | ) | |
| DEPARTMENT; BOARD OF | ) | |
| REGENTS, UNIVERSITY | ) | |
| SYSTEM OF GEORGIA; | ) | |
| UNIVERSITY SYSTEM OF | ) | |
| GEORGIA FOUNDATION, INC. | ) | **JURY TRIAL DEMAND** |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

## COMPLAINT

COMES NOW, Barron White the above-named plaintiff, pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964) as amended by the Civil Rights Act of 1991 for employment discrimination on the basis of sex (male), and retaliation (for opposition to discrimination and EEO activity), and hereby submits this complaint against the above-named defendant on the following grounds.

## JURISDICTION AND VENUE

### 1.

The Court possesses subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized by the Constitution of the United States of America, Section 703 of 42 U.S.C. §§ 2000e-2(a).

### 2.

This Court possesses jurisdiction over the University System of Georgia Foundation, Inc. (hereinafter "Defendant"). Defendant is located within the Northern District of Georgia. The acts of which plaintiff complains all occurred within this district, specifically the Atlanta State Metropolitan College, 1630 Metropolitan Pkwy SW, Atlanta, GA 30310.

### 3.

Venue in this District and division is proper under 28 U.S.C. § 1391 as some or all of the defendants are located in the Northern District of Georgia, Atlanta Division, and the unlawful acts complained of herein occurred in this district at Atlanta Metropolitan State College.

## PARTIES

4.

At all relevant times, Plaintiff served as a police officer for the Atlanta

Metropolitan State College Police Department, which operates under the direction

and authority of the University System of Georgia.

5.

Defendant may be served at its principal place of business: 1630

Metropolitan Parkway SW, Atlanta, GA 30310. Defendant is a subsidiary of the

University System of Georgia, a Domestic Nonprofit Corporation registered in

Georgia with a principal place of business located at 270 Washington Street SW,

Suite 7002, Atlanta, GA, 30334. Defendant may be served with process through

the Board of Regents at that address, and through its registered agent at 227 Sandy

Springs Place, Ste D-355, Atlanta, GA, 30328.

6.

The responsible management officials ("RMO's") in this Complaint are

Corporal Hill, Captain Crawford, Chief Gammon, and the Chief Human Resources

Officer, Mitzi Williams.

EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

7.

Plaintiff timely filed a Charge of Discrimination with the United States

Equal Employment Opportunity Commission ("EEOC") identified as Case No.

410202001696.

8.

On April 18, 2022, the EEOC issued a Notice of Suit Rights, signed by

Karen L. Ferguson, Supervisory Civil Rights Analyst, attached to this Complaint.

The instant action was commenced within 90 days of plaintiff's receipt of the

Notice of Suit Rights and the plaintiff has complied with all conditions precedent

necessary to the initiation of this action.

FACTUAL ALLEGATIONS

9.

Plaintiff began his employment with Defendant as a campus police officer

for Atlanta State Metropolitan College on or about October 21, 2017.

10.

Plaintiff's supervisor and Field Training Officer at the time of his hire was Officer Hatcher. Officer Hatcher had been employed by the Defendant since August 2021. Officer Hatcher's appointment to this position violated the Georgia Peace Officer Training Council Rule 464-13.03 which requires a minimum two years of tenure with an agency before qualifying for a Field Training Officer position.

11.

On or about November 11, 2017, Officer Hatcher and Officer White conducted a traffic stop. During that stop, Officer Hatcher left Officer White's side to have a phone conversation during a time in which the driver of the vehicle began making movements that left Officer White fearing for his own safety. As a result of this incident, Officer White did not feel safe with Officer Hatcher as while on duty.

Plaintiff immediately reported his concerns to Corporal Smith, the appropriate second line supervisor within the Defendant's chain of command.

12.

In January and February 2018, Officer Hatcher papered Plaintiff's personnel file with negative reviews and baseless write-ups.

13.

As a result, Plaintiff's evaluation of March 10, 2018, indicated that Plaintiff was not performing up to his employer's expectations. This is despite the fact that Plaintiff's December 2017, review indicated Plaintiff displayed superior performance.

14.

Plaintiff reported the retaliatory efforts of Officer Hatcher Chief Long in April 2018. Rather than address Plaintiff's concerns, Chief Long informed Plaintiff that his probationary period would be extended additional 90 days as a result of the evaluation.

15.

In August 2018, Plaintiff was assigned a new supervisor, Corporal Hill.

16.

Corporal Hill requested that Plaintiff join Corporal Hill for beers so that they could "get to know each other." Shortly thereafter while having a conversation with Corporal Hill while on patrol, Plaintiff noticed Corporal Hill gazing at Plaintiff in a sexual manner.

17.

On or about March 28, 2019, Plaintiff and Corporal Hill were conversing when Plaintiff noticed Corporal Hill staring directly at Plaintiff's genital area in a sexual manner.

18.

On or about March 28, 2019, Plaintiff was patrolling campus in a vehicle with Corporal Shackelford when Corporal Hill began following them and requested via radio that they pull over. Corporal Hill requested that Corporal Shackelford drive Corporal Hill's vehicle so that Plaintiff could drive Corporal Hill's vehicle in an effort for Corporal Hill to be alone with Plaintiff.

19.

Plaintiff, uncomfortable with this situation, immediately requested that he be assigned to foot patrol. This request was granted.

20.

Later that day, Corporal Hill radioed Plaintiff and requested a meeting. At that meeting Corporal Hill questioned Plaintiff as to why he insisted on foot patrol and whether it was because Plaintiff did not want to ride with Corporal Hill.

21.

Plaintiff immediately reported this harassing behavior to Captain Crawford and requested to be released for the day. Captain Crawford granted Plaintiff's request and informed him that she would deliver the harassment complaint to Defendant's Human Resources department.

22.

On or about April 1, 2019, Plaintiff met with Defendant's Human Resources representatives concerning Corporal Hill's continued harassment. On or about April 22, 2019, Plaintiff discovered that Corporal Hill was aware of the complaint, had reviewed it, and was openly discussing it with other officers.

23.

On or about April 23, 2019, Plaintiff informed Defendant that he did not feel comfortable with the integrity of the investigation, and that he was uncomfortable meeting with Human Resources representatives further without a representative present.

24.

On April 26, 2019, Officer White met with Defendant's Human Resources representatives, wherein he continued to reiterate his discomfort with the Defendant's investigation process. Plaintiff indicated that he would like to schedule a meeting with Chief Gammon to discuss the unfair and discriminatory

treatment Plaintiff endured. The above-referenced meeting was held on May 30, 2019.

### 25.

Despite Plaintiff's complaints about discriminatory treatment, management took no prompt action to remedy the discrimination.

### 26.

On June 12, 2019, Chief Gammon called Officer White to report to the precinct. At that meeting, Defendant terminated Plaintiff for the stated reason of making false statements.

## COUNT I:  SEX-BASED DISRIMINATION

### 27.

Plaintiff realleges the preceding paragraphs of this Complaint.

### 28.

Plaintiff is a male. At all relevant times the Responsible Management Officials ("RMO's") were aware of Plaintiff's sex.

### 29.

At all relevant times, Plaintiff was subjected to a pattern of harassment from his supervisor and coworkers based upon Plaintiff's sex.

30.

The above-described actions of Plaintiff's supervisor/coworker were of an inappropriate sexual nature designed to intimidate and harass Plaintiff.

31.

Plaintiff's reports of the harassment he endured were routinely ignored or dismissed by Defendant.

32.

Defendant was responsible for the actions of Plaintiff's supervisors and Defendant was obligated to provide Plaintiff a workplace free of harassment and intimidation.

33.

By ignoring Plaintiff's complaints, failing to intervene when it was made aware of harassment based on sex, failing to provide a workplace free from harassment, and ultimately terminating Plaintiff, Defendant discriminated against Plaintiff on the basis of his sex.

COUNT II:  RETALIATION FOR OPPOSITION TO DISCRIMINATION

34.

Plaintiff realleges the preceding paragraphs of this Complaint.

35.

Plaintiff expressly complained about discrimination on the basis of his sex. Shortly after Plaintiff's protected activity i.e., his opposition to discrimination, Plaintiff was subjected to retaliation when Defendant terminated Plaintiff's employment.

36.

At all relevant times, Defendant was aware of Plaintiff's opposition to discrimination prior to terminating Plaintiff.

37.

Defendant's actions were wrongful and illegal, with a sufficient nexus to his protected activity where Defendant's actions were motivated by Plaintiff's opposition to discrimination. Specifically, Plaintiff experienced a sudden termination based upon pretextual motivation. More specifically, Defendant stated that it terminated Plaintiff for engaging in protected activity, constituting *per se* retaliation.

38.

The adverse actions by management were sufficient to dissuade a reasonable employee from making a charge of discrimination.

## COUNT III: HOSTILE WORK ENVIRONMENT BASED ON SEX AND RETALIATION FOR OPPOSITION TO DISCRIMINATION

### 39.

Plaintiff realleges the preceding paragraphs of this Complaint.

### 40.

Plaintiff belonged in a protected class as a male and where he opposed discrimination on the basis of his sex and otherwise engaged in EEO activity.

### 41.

Defendant lacked a legitimate non-discriminatory reason for its actions or said reasons were otherwise pretext for discrimination. Thus, Plaintiff's protected class motivated Defendant's adverse actions against Plaintiff.

### 42.

The adverse acts complained of were sufficiently severe and pervasive where they occurred with frequency, over several months, and where the acts had the purpose or effect of unreasonably interfering with a term or condition of Plaintiff's employment, and created an intimidating, hostile, and offensive working environment. The retaliatory and harassing acts described above continued to interfere with his work until he was terminated as an act of reprisal.

### 43.

Defendant is liable for subjecting Plaintiff to harassment and hostile work environment based on Plaintiff's protected classes.

## DAMAGES

### 44.

Plaintiff was severely damaged as a result of Defendant's actions, losing wages and benefits when he was terminated and suffering the stigma and loss of professional standing associated with Defendant's discriminatory treatment of Plaintiff and wrongfully being accused of making false statements when he exercised his rights under Title 7.  Plaintiff is entitled to compensation for mental anguish, lost benefits and lost wages and the other relief hereinafter requested.

### 45.

Defendant's actions caused Plaintiff to suffer mental and emotional distress, entitling Plaintiff to compensatory damages pursuant to 42 U.S.C. § 1981a

### 46.

Defendants have engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment as follows:

A. That the Court grant full back pay and benefits to Plaintiff retroactively, and any front pay as the Court deems appropriate;

B.  That the Court grant compensatory damages for loss of future earnings and future economic losses and costs;

C.  That the Court grant all quantifiable non-pecuniary compensatory damages that Plaintiff incurred as a result of the discrimination;

D.  That the Court grant Plaintiff $300,000 and more in both non-pecuniary compensatory damages for the humiliation, emotional distress, and pecuniary costs to be calculated by Plaintiff, and other damages caused by Defendant's conduct;

E.  That the Court grant Plaintiff all employment benefits he would have enjoyed had he not been discriminated against and restore him to the status quo ante, including backpay;

F.  That the Court grant Plaintiff the expenses of litigation, including reasonable attorney's fees, pursuant to Title VII, and 42 U.S.C. § 1988;

G.  That the Court grant Plaintiff a jury trial;

H.  That the Court grant all other relief and remedies this Court deems just and equitable.


This 11th Day of July, 2022

Respectfully Submitted,

CRAYON LAW FIRM

<u>*/s/ Kevin Curtis Crayon II, Esq.*</u>
Kevin C. Crayon II
Georgia Bar No. 903973
Attorney for Plaintiff

125 Townpark Drive, Suite 300
Kennesaw, Georgia 30144
Office: (678) 653-6645
Fax: (888) 850-3845
kevin@crayonlawfirm.com